IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martinez

Criminal Case No. 21-cr-049-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     ANDREA VELASCO,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

---

This matter is before the Court on *pro se* Defendant Andrea Velasco's Motion for Compassionate Release (ECF No. 191) ("Motion"), to which the Government filed a response (ECF No. 195). For the reasons explained below, the Motion is denied.

## I.     BACKGROUND

Velasco was convicted, following a guilty plea, of one count of distribution and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). (ECF Nos. 164, 165.) On July 3, 2024, the Court sentenced her to 78 months of imprisonment, to be followed by a four-year term of supervised release. (ECF No. 165.) To date, Velasco has served approximately 16 months of her 78-month sentence, accounting for time served. (ECF No. 191 at 1; ECF No. 195 at 1.)

Velasco seeks "Compassionate Release and a federal public defender to assist [her] with this filing based on the fact that [she is] the primary caregiver for [her] 19-year-

old daughter[]." (ECF No. 191 at 1.) She explains her daughter "has had a multitude of physical and mental health challenges" "since [she] was a toddler," including "slipped-rib syndrome, polycystic ovary syndrome, fatty liver disease," (*id.*), "severe GERD," "autoimmune issues[,] and a weakened heart," (ECF No. 196 at 1). As of late, Velasco states her daughter recently underwent gall bladder surgery and an endoscopy, "is currently undergoing testing to determine why she has such severe stomach symptoms," and "suffers from extreme symptoms of debilitating depression, PTSD, anxiety, and suicidal ideations." (ECF No. 191 at 1.)

Velasco asserts she has "no other outside support except [her] 85-year-old mother (who also needs [her])." (*Id.*) Velasco's mother submitted a letter in support of the Motion, in which she similarly states that her granddaughter "has very serious mental and physical health issues that [Velasco] was handling before her incarceration." (ECF No. 194 at 1.) Velasco's mother states she is "too far away[1] to give her [granddaughter] hugs or just be there with her and since [she] has no mental health training, all [she] can do is listen and . . . [her granddaughter] needs so much more than [she] can give." (*Id.*) She explains that "[Velasco] worked in the medical field for several years and through that, knows who to contact, who will be best suited for [her granddaughter's] issues and coordinating insurance with [the] provider—what is covered, who is covered, and getting things done quickly, now, not later." (*Id.*)

In a supplemental letter, Velasco adds that "a new development in her family dynamic has occurred" that contributes to the necessity of her release. (ECF No. 196 at

---

[1] Based on the return address listed on the letter, the Court understands that Defendant's mother resides in Arizona. (*See generally* ECF No. 194.)

1.) On or around the end of January 2025, her daughter's father (Velasco's ex-husband) flew to Florida[2] to "attend[] to both of his ill and elderly parents," who are also in declining health. (*Id.*) As a result, Velasco states her ex-husband "is struggling to assist [their] daughter[] with her current mounting mental and medical health issues and expenses." (*Id.*)[3]

Velasco thus asserts that, "[w]ithout [her], her [daughter's] mother and primary caregiver, helping her [daughter] navigate the confusing and crippling maze of insurance approvals, claims, appointments, physicians, and treatments, her [daughter's] mental and physical health is declining rapidly." (ECF No. 191 at 1.) She states, for example, that her daughter "was recommended inpatient psychiatric treatment," but "she does not have anyone to help her find a facility and get the required letters, approvals and documentation to get her promptly admitted." (*Id.*) Velasco also states she is "needed . . . to assist in paying her [daughter's] mounting exorbitant medical bills." (*Id.*) She explains that her daughter "is unable to work or attend college or care entirely for herself" "due to her significant mental and medical health issues." (ECF No. 196 at 1.) She "was enrolled in college in NYC right before [Velasco's] incarceration," but she "has failed her classes and is now not able to attend due to her worsening health situation." (ECF No. 191 at 1.) Velasco is "petrified [her] daughter will end her life is she does not quickly get the medical and mental health help she needs." (*Id.*)

---

[2] It is unclear to the Court whether he expects to remain in Florida indefinitely.

[3] Velasco states that her ex-husband also "wrote the [C]ourt regarding [her daughter's] extensive mental and physical health needs and expenses." (ECF No. 196 at 1.) However, there is no such letter in the record.

At bottom, Velasco asks the Court to permit her to serve the remainder of her sentence "at a halfway house and/or in home incarceration so [she] can support [her] daughter—medically, mentally and financially." (*Id.*)  To support that she is not a danger to society, Velasco states she "received no violations" "[d]uring pre-trial whilst [she] was on home incarceration and curfew for almost 8-months." (*Id.*)  Since her incarceration, Velasco states she has a "zero recidivism score, ha[s] received no infractions in prison, [and] ha[s] completed three life classes and one social psychology class . . . ." (*Id.*; *see also* ECF No. 197 (certificates evidencing Velasco's participation in certain programs).)

## II.     ANALYSIS

Velasco invokes the Court's authority to grant what is commonly referred to as "compassionate release."  Under the applicable statutory framework:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in any case . . . the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ["BOP"] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).  Thus, the Court may reduce a defendant's term of imprisonment if (1) extraordinary and compelling reasons warrant such a reduction, (2) the reduction is

consistent with applicable policy statements issued by the Sentencing Commission, and (3) the factors set forth in § 3553(a) are satisfied.  *United States v. McGee,* 992 F.3d 1035, 1042 (10th Cir. 2021).

As a threshold matter, there is nothing in the record establishing that Velasco satisfied the statute's exhaustion requirements before filing the Motion.  While there is "[a] narrow exception to the exhaustion requirement . . . if a petitioner can demonstrate that exhaustion would be futile," she has not argued that exception applies here.  *Garza v. Davis,* 596 F.3d 1198, 1203 (10th Cir. 2010).  "Accordingly, the Court does not have jurisdiction to consider [Velasco's] request for compassionate release."  *United States v. Gonzalez,* 2020 WL 1905071, at *1 (D. Colo. Apr. 17, 2020).

Even assuming, however, that Velasco satisfied § 3582(c)'s exhaustion requirements before filing the Motion, or that an exception otherwise applies,[4] the Court agrees with the Government that she has not persuasively shown that extraordinary and compelling circumstances warrant her release at this time.  To be sure, "[t]he death or incapacitation of the caregiver of . . . the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or condition" can constitute "extraordinary and compelling reasons" pursuant to the Sentencing Guidelines.  U.S.S.G. § 1B1.13(b)(3) (2024 ed.).  And the Court is sympathetic to the health struggles faced by Velasco's daughter.  Indeed, it has little trouble believing that her mother's incarceration has taken a toll on her, at least mentally and emotionally, if not also physically.

---

[4] Notably, the Government does not argue in its response that Velasco failed to satisfy § 3582(c)'s exhaustion requirements.  (*See generally* ECF No. 195.)

At the same time, however, the Court has reservations about the credibility of some of Velasco's statements. Although she was sentenced only seven months ago, this is the first time the Court has heard mention of her daughter's purportedly chronic conditions, and the criticality of Velasco's role in shepherding her daughter through her care and treatments. No such information was ever conveyed to the Court in presentence filings (*see, e.g.,* ECF No. 154; ECF No. 158 at ¶ 48) or at sentencing (*see generally* ECF No. 176). To the contrary, Velasco's daughter seemed, by all accounts, to be doing quite well academically up until that point. (*See* ECF No. 176 at 37 (where Defendant stated at sentencing she "moved from Highlands Ranch to Colfax" because her daughter "got accepted into Denver Performing Arts High School.").) And as the Government points out, she "was deemed capable of independently attending college across the country," in New York City, only months ago. (ECF No. 195 at 3.) While it is quite feasible her physical and mental health could have deteriorated in the ensuing months (as Velasco asserts is the case), these circumstances nonetheless belie Velasco's argument that her release to a halfway house or home incarceration is a *necessity* so that she can assume a primary caretaking role.

Moreover, the Government is correct that this Court very recently evaluated the relevant § 3553(a) factors and determined a 78-month sentence was appropriate. In the Court's view, the facts have not so substantially changed in the intervening seven months to warrant an approximately 80% reduction in Velasco's sentence. The Court further notes that her sentence already reflects a substantial downward variance from the minimum guideline sentence of 108 months. (ECF No. 166 at 1.) Thus, Velasco's requested reduction would represent at least an 85% reduction from the applicable

6

guideline range. The Court is unpersuaded such a sentence is consistent with the § 3553(a) factors. *See, e.g.,* 18 U.S.C. § 3553(a)(2) (directing the Court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); § 3553(a)(4) (same as to "the kinds of sentence and the sentencing range established for . . . the applicable category of offense as set forth in the guidelines . . . issued by the Sentencing Commission"); § 3553(a)(6) (same as to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

The Court reiterates its sympathy toward the physical, mental, and emotional turmoil Velasco's daughter is currently facing. Nonetheless, it, like the Government, has little doubt that Velasco's desire to support her daughter in a different or more extensive capacity than her incarceration currently enables is a feeling shared by a very large number of other people currently serving prison sentences as to their family members. For the same reason, the Court cannot say the circumstances she has presented meet the standard of "extraordinary and compelling." Her Motion is thus denied.

Discerning no compelling justification for Velasco's compassionate release, her request for the appointment of counsel is also denied at this time. *U.S. v. Olden,* 296 F. App'x 671, 674 (10th Cir. 2008) (because "no constitutional right to appointed counsel exists for the purpose of bringing a § 3582(c) motion for a reduction of sentence" the decision whether to appoint counsel is in the district court's discretion).

### III.  CONCLUSION

For all the foregoing reasons, Defendant's Motion for Compassionate Release (ECF No. 191) is DENIED.

Dated this 20th day of March, 2025.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge
